UNITED  STATES  DISTRICT  COURT
SOUTHERN  DISTRICT  OF  GEORGIA
SAVANNAH  DIVISION

| | | |
|---|---|---|
| DENISE BATH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | CV416-279 |
| NANCY A. BERRYHILL,[1] | ) | |
| Acting Commissioner of | ) | |
| Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Plaintiff Denise Bath seeks judicial review of the Social Security

Administration's denial of her application for Disability Insurance

Benefits (DIB) and Supplemental Security Income (SSI).

## I.  GOVERNING STANDARDS

In social security cases, courts

> . . . review the Commissioner's decision for substantial evidence. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011).  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Id.* (quotation omitted). . . .  "We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the Commissioner."   *Winschel*, 631 F.3d at

---

[1]    Nancy A. Berryhill is now the Acting Commissioner of Social Security, and has been substituted for Acting Commissioner Carolyn W. Colvin as the defendant.   *See* Fed. R. Civ. P. 25.

1178 (quotation and brackets omitted).  "If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it."  *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quotation omitted).

*Mitchell v. Comm'r, Soc. Sec. Admin.,* 771 F.3d 780, 782 (11th Cir. 2014).

The burden of proving disability lies with the claimant.  *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).   The ALJ applies

. . . a five-step, "sequential" process for determining whether a claimant is disabled.  20 C.F.R. § 404.1520(a)(1).  If an ALJ finds a claimant disabled or not disabled at any given step, the ALJ does not go on to the next step.  *Id.* § 404.1520(a)(4).  At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity.  *Id.* § 404.1520(a)(4)(i). At the second step, the ALJ must determine whether the impairment or combination of impairments for which the claimant allegedly suffers is "severe."  *Id.* § 404.1520(a)(4)(ii).  At the third step, the ALJ must decide whether the claimant's severe impairments meet or medically equal a listed impairment.  *Id.* § 404.1520(a)(4)(iii).  If not, the ALJ must then determine at step four whether the claimant has the RFC[2] to perform her past relevant work.  *Id.* § 404.1520(a)(4)(iv).  If the claimant cannot perform her past relevant work, the ALJ must determine at step five whether the claimant can make an adjustment to other work, considering the claimant's RFC, age, education, and work

---

[2]   At steps four and five, the ALJ assesses the claimant's residual functional capacity (RFC) and ability to return to her past relevant work.  *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004).  RFC is what "an individual is still able to do despite the limitations caused by his or her impairments."  *Id.* (citing 20 C.F.R. § 404.1545(a); *Moore v. Comm'r of Soc. Sec.*, 478 F. App'x 623, 624 (11th Cir. 2012).  "The ALJ makes the RFC determination based on all relevant medical and other evidence presented.  In relevant part, the RFC determination is used to decide whether the claimant can adjust to other work under the fifth step."  *Jones v. Comm'r of Soc. Sec.*, 603 F. App'x 813, 818 (11th Cir. 2015) (quotes and cite omitted).

experience.    An  ALJ  may  make  this  determination  either  by
applying  the  Medical  Vocational  Guidelines  or  by  obtaining  the
testimony of a [Vocational Expert (VE)].

*Stone v. Comm'r. of Soc. Sec. Admin.*, 596 F. App'x, 878, 879 (11th Cir.

2015) (footnote added).

## II.   ANALYSIS

Bath,  who  was  50  years  old  when  her  DIB  and  SSI  claims  were

denied,  alleges  disability  beginning  May  2,  2012.    Tr.  40,  270,  278.

She  completed  high  school  and  has  past  work  experience  as  a  medical

receptionist.    Tr.  93.    After  a  hearing,  the  ALJ  issued  an  unfavorable

decision.    Tr.  40-502.    He  found  that  Bath's  diabetic  peripheral

neuropathy, exacerbated by her obesity, constituted a severe impairment

but  did  not  meet  or  medically  equal  a  Listing.    Tr.  42-46.    The  ALJ  also

considered  her  type  II  diabetes  mellitus,  hypertension,  joint-nerve

damage  in  her  feet,  plantar  warts  and  surgical  history,  cardiac  problems

and  surgical  history,  morbid  obesity,  and  breathing  problems,  but

concluded  that  they  did  not  constitute  medically  severe  impairments.

*Id.*   Based on the evidence of record,[3] the ALJ found that she retained

---

[3]    Because one of plaintiff's treating physicians, cardiologist Dr. Bryan Hartley, had
not completed a functional assessment, the ALJ left the record open after the hearing
to  enable  plaintiff  to  provide  any  supplemental  medical  records  or  questionnaires
supporting her allegation of a severe cardiac impairment.   Tr. 46-47.   However, she

the RFC for light work[4] except she could never climb ladders, ropes or scaffolding; could sit/stand/walk/push/pull upper extremity controls for six hours in an eight-hour workday; could lift/carry 20 pounds occasionally and 10 pounds frequently; and could operate lower extremity control for up to 2/3 of an eight-hour workday.  Tr. 46. Plaintiff, he determined, was capable of performing her past work as a medical receptionist and thus not disabled through June 18, 2015 (the date of the decision).  Tr. 49.

Bath appealed to the Appeals Council (tr. 33 & 35), and submitted additional records in support of her claim: (1) treating records dated January through May 2015 (before the date of the decision), and (2) treating records dated June 24 through October 8, 2015 (after the date of the decision).  The Appeals Council considered the first set of medical records but declined to consider the second, as the "new information is about a later time" and "does not affect the decision about whether [she was] disabled beginning on or before June 18, 2015." Tr. 2.  It then denied Bath's request for review, concluding that there

---

did not supplement the record.  Tr. 47.  The ALJ thus concluded there was not sufficient medical evidence to find her alleged impairment "severe" at Step 2.  *Id.*

[4]   Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  20 C.F.R. § 404.1567(b).

was no basis to review the ALJ's decision.   Tr. 1-7.

Bath disagrees, arguing that (1) the ALJ improperly relied on her failure to seek treatment for her myriad impairments to find them non-severe at Step 2, and (2) the Appeals Council erred by not considering her post-decision supplemental medical records.

### A.   Step 2 Severe Impairments

At Step 2, the ALJ only found plaintiff's diabetic peripheral neuropathy, exacerbated by obesity, to be a severe impairment.   Tr. 42. Her other impairments he concluded were non-severe because there was: no medical evidence supporting the existence of, much less severe limitations imposed by, her respiratory issues, foot and ankle joint issues, or back, shoulder and arm pain; "no credible objective evidence of more than minimal associated limitations" imposed by her cardiac issues; "no evidence of associated end organ damage or functional limitations" imposed by her hypertension, hyperlipidemia, and diabetes mellitus; her plantar warts (post-debridement and excision) had "responded to treatment" and "not been shown to result in significant (*i.e.,* more than mild) limitations in functioning for at least twelve consecutive months"); while her obesity was "severe only in that it

reasonably exacerbates symptoms associated with her peripheral neuropathy."   Tr. 42-43.

Plaintiff contends the ALJ erred at Step 2 because he "failed to account for any explanation for Bath's inability to afford additional treatment" to explain the "lack of evidence regarding Bath's multiple problems."   Doc. 13 at 10.   Had he examined her poverty, she contends, he would have been forced to find her myriad impairments severe at Step 2.   *Id.* at 10-11.   To back this up, she quotes an in-district case, *Beckum v. Colvin*, 2014 WL 7272537 (S.D. Ga. Dec. 17, 2014), which held that

> . . . the failure to seek treatment is inextricably intertwined with the credibility determination, as well as the ALJ's decision to discredit Plaintiff's subjective complaints, and ultimately, with the ALJ's decision to stop the sequential process at step two.   The Court cannot guess at how much weight the ALJ placed on Plaintiff's failure to seek treatment and whether consideration of an inability to pay might change the ALJ's decision that Plaintiff did not meet his burden at Step 2.

Doc. 13 at 11 (quoting *Beckum*, 2014 WL 7272537 at *5); doc. 15 at 8 (same).

But plaintiff misapprehends the standard articulated by the Court in *Beckum*: the ALJ cannot stop at Step 2 based on plaintiff's failure to seek treatment.   *See* 20 C.F.R. § 404.1520(a)(4)(ii).   Here, the ALJ found a severe impairment at Step 2 (diabetic peripheral neuropathy,

exacerbated by her obesity) and then *continued on with the sequential analysis*.   Tr. 42-49.   So, whether or not the ALJ should have explicitly noted Bath's inability to afford other treatment as a potential explanation for the dearth of records backing up her list of impairments, such error is *harmless*.

"At step two the ALJ must determine if the claimant has *any* severe impairment.   This step acts as a filter; . . . the finding of any severe impairment, whether or not it qualifies as a disability and whether or not it results from a single severe impairment or a combination of impairments that together qualify as severe, is enough to satisfy the requirement of step two."   *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987) (emphasis added).   Because the ALJ moved on to Step 3, even if he *should have* found every single one of her other impairments severe at Step 2, such error is harmless.   *Medina v. Soc. Sec. Admin.*, 636 F. App'x 490, 492 (11th Cir. 2016); *McCormick v. Comm'r*, 619 F. App'x 855, 858 (11th Cir. 2015); *Tuggerson-Brown v. Comm'r*, 572 F. App'x 949, 951 (11th Cir. 2014) ("there is no need for an ALJ to identify every severe impairment at step two").   The ALJ's Step 2 analysis does not warrant remand.

## B.    The Appeals Council

Bath also takes issue with the Appeals Council's evaluation of the new evidence she submitted for its decision to review the ALJ's decision. Docs. 13 & 15.  "With a few exceptions, the claimant is allowed to present new evidence at each stage of this administrative process," including before the Appeals Council.  *Ingram v. Comm'r*, 496 F.3d 1253, 1261 (11th Cir. 2007).

The Appeals Council has the discretion not to review the ALJ's denial of benefits.  *See* 20 C.F.R. § 416.1470(b).  But it "must consider new, material, and chronologically relevant evidence" that the claimant submits.  *Ingram*, 496 F.3d at 1261; *Washington v. Comm'r*, 806 F.3d 1317, 1320 (11th Cir. 2015); *see also* 20 C.F.R. §§ 404.970(b), 416.1470(b).    When  the  Appeals  Council  accepts  and  considers additional evidence, then denies review, it is not "required to provide a detailed rationale for denying review."  *Mitchell v. Comm'r*, 771 F.3d 780, 784 (11th Cir. 2014).  And when the Appeals Council "erroneously refuses to consider evidence, it commits legal error and remand is appropriate."  *Washington*, 806 F.3d at 1320.

Bath  submitted  additional  records  to  the  Appeals  Council:

(1) treating records dated January through May 2015 (before the date of the decision), and (2) treating records dated June 24 through October 8, 2015 (after the date of the decision). Tr. 8-31. The Appeals Council considered the first set but found them to be immaterial; it declined to consider the second, as the "new information is about a later time" and thus has no effect on "the decision about whether [she was] disabled beginning on or before June 18, 2015." Tr. 2. Bath argues that the Appeals Council was required to review the later records because they "relate to the problems and limitations [she] suffered during the relevant period." Doc. 13 at 9.

While treatment occurring after the date of the ALJ's decision may be chronologically relevant, it must also be material. *Washington*, 806 F.3d at 1323. Here, the Appeals Council rejected as chronologically irrelevant the June 24, July 10, and August 7, 2015, records from Chatham Medical Associates (tr. 10-13, 20-31) and October 8, 2015, records from Savannah Neurology Associates (tr. 8-9). Tr. 2. Those records reflect plaintiff's follow-ups with treating physician Dr. Beard for medication adjustments (tr. 20 & 28-29) and filling out a disability form (tr. 10), and a nerve conduction study which demonstrated moderate,

distal, symmetric axonal polyneuropathy of the lower extremities and mild carpal tunnel syndrome (tr. 8-9). Bath doesn't explain what impairments, precisely, these records relate back to, aside from concluding that they must. *See* docs. 13 & 15. But even if the Court credits plaintiff's argument that these records 'relate back' to her condition prior to the ALJ's June 18, 2015, decision, they are immaterial.

Treatment records are material if "there is a reasonable possibility" that they "would change the administrative result." *Hyde v. Bowen*, 823 F.2d 456, 459 (11th Cir. 1987). These records only pertain to symptoms the ALJ fully considered at Step 2 (particularly, plaintiff's peripheral neuropathy, which he found severe at that step) and Step 4 (where he assessed plaintiff's functional limitations imposed by her various impairments, both severe *and* non-severe). Tr. 42-49. Plaintiff concludes that they are "certainly material" but offers no explanation about *how* these records would have altered anything in the ALJ's decision at any step of the sequential analysis. Doc. 13 at 8.

Plaintiff notes that the nerve study "is the first hard, objective evidence confirming Bath's similar and consistent complaints during the relevant period." Doc. 15 at 2. But the ALJ credited her peripheral

neuropathy at Step 2 as severe and imposed functional limitations (significant restrictions on climbing and using foot pedals and moderate restrictions on her ability to lift/carry and push/pull) to address it at Step 4. Tr. 42 & 48-49. Bath doesn't explain how the nerve conduction study -- which observed severe sensory axon loss in her legs but only *mild* sensory axon loss in her arms with no motor loss, and diagnosed only *mild* right carpal tunnel syndrome (*id.* at 9) -- would have enhanced those limitations. *See* docs. 13 & 15.

Bath relies on two out-of-district cases that held post-decision objective evidence of neuropathy relevant and material. Doc. 15 at 3-4 (citing *Beckner v. Berryhill*, 2017 WL 432826 (W.D. Va. Jan. 31, 2017) and *Malloy v. Astrue*, 2013 WL 167660 (N.D. Cal. Jan. 15, 2013)). But *Beckner* involved medical evidence supporting an entirely new neurological disease, Charcot-Marie-Tooth disease, separate and apart from Beckner's severe impairment of peripheral neuropathy, that the Appeals Council should have considered as material to his pain allegations. 2017 WL 432826 at *4. And in *Malloy*, the ALJ had not even found a severe physical impairment at Step 2, so later diagnostic testing evidencing physical abnormalities and radiculopathy was

11

obviously relevant and material, as there was "a reasonable possibility" that the long-awaited diagnosis of a physical impairment "would have changed the outcome of the ALJ's determination."   2013 WL 167660 at *4.   Here, the evidence neither clearly 'relates back' to the relevant period *nor* is material to the outcome of the case.   The Appeals Council did not err by declining to consider it.   *Washington*, 806 F.3d at 1321.[5]

## III.   CONCLUSION

Because the ALJ's decision is supported by substantial evidence in the record, the Commissioner's final decision should be **AFFIRMED**.

This report and recommendation (R&R) is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3.   Within 14 days of service, any party may file written objections to this R&R with the Court and serve a copy on all parties.   The document should be captioned "Objections to Magistrate

---

[5]   As to the treating records dated January through May 2015 (from the period before the date of the decision) from Chatham Medical Associates (tr. 567-78), St. Joseph's Hospital (tr. 579-82), and treating physician Dr. Beard (tr. 583-87), Bath concedes that the Appeals Council properly considered and incorporated them into the record and properly concluded the information did not provide a basis for altering the ALJ's decision.   Doc. 15 at 5-6.   And Bath's complaint that the Appeals Council failed to mention Dr. Beard's summer 2012 records (doc. 13 at 8, citing tr. 583-99) is apparently withdrawn, given the Commissioner's note that those records were contained in the record before the ALJ and, in fact, are explicitly referenced at multiple levels of the administration's review and denial of plaintiff's DIB and SSI claims.   Doc. 14 at 13, n. 4 (citing tr. 43 (ALJ's decision), 105 (state agency reviewing physician's disability assessment), 116 (same)).

Judge's Report and Recommendations."   Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge.   The district judge will review the magistrate judge's findings and recommendation pursuant to 28 U.S.C. § 636(b)(1)(C).   The parties are advised that failure to timely file objections will result in the waiver of rights on appeal.   11th Cir. R. 3-1; *see Symonett v. V.A. Leasing Corp.,* 648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. U.S.,* 612 F. App'x 542, 545 (11th Cir. 2015).

**SO REPORTED AND RECOMMENDED**, this __18th__ day of July, 2017.

_____
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA